TULSA COUNTY, and Own
Risk, Petitioners,

v.

Arthur Clyde ROBERTS, and the
Workers' Compensation Court,
Respondents.

No. 65151.

Court of Appeals of Oklahoma,
Division No. 4.

June 2, 1987.

David Moss, Dist. Atty., Dick A. Blake-
ley, Asst. Dist. Atty., Tulsa, for petitioners.

W.E. Sparks, Boettcher & Ryan, Okla-
homa City, for respondents.

BRIGHTMIRE, Presiding Judge.

The crucial issue is whether under the
law the trial court could validly award

claimant compensation for "25 percent permanent partial disability to the Right Hip."

We hold that it could not and that the award had to be in terms of disability to the body as a whole.

## I

Claimant, Arthur Clyde Roberts, filed this claim January 12, 1982, saying that on November 4, 1981, while operating a large commercial floor buffer for Tulsa County, he lost control of it and was struck by its handle in the area of his right hip and side. The blow was pretty hard, he said, and caused a lot of pain. Claimant sat down for twenty minutes or so before resuming work. After a couple of days of continued pain Roberts decided to see his physician who X-rayed the hip area. Claimant continued to work in spite of increasing pain which, he said, ultimately became so bad he had to resort to the use of crutches to walk extended distances.

Eventually, in 1983, he went to see another doctor who X-rayed the hip joint and scheduled him for surgery—to replace the hip joint. This surgery was performed November 29, 1983, and claimant has not been able to work since.

There was also evidence of a previous injury to claimant's right hip when he fell on an ice-covered walkway on January 16, 1978, which, it turned out, consisted of a broken neck of the right femur. The fracture was reduced and internally fixed with a Richard's compression screw. That injury was never adjudicated.[1]

On March 5, 1985, claimant was examined by an Oklahoma City doctor who concluded that Roberts had sustained 46 percent permanent partial impairment of the whole man as a result of the November 4, 1981, floor buffer accident.

Following this, a deposition of claimant's expert was taken by agreement of the parties. The employer refers to it as a "discovery deposition taken ... by Petitioner [Tulsa County]" although the deposition recites that it was "Taken on Behalf of the Claimant."

Eventually, on August 22, 1985, the matter came on for hearing. Roberts offered the narrative medical report and deposition of his Oklahoma City expert. Tulsa County objected to the admission of the deposition and was overruled. The trial court entered an order finding that claimant had sustained 25 percent permanent partial disability "to the Right Hip" as a result of the 1981 accident and awarded 125 weeks of compensation.

In its appeal Tulsa County complains that the narrative report of claimant's expert as well as his deposition testimony are incompetent and should have been excluded thus leaving the claim without evidentiary support.

## II

Was it error to admit into evidence either the report of claimant's expert or his deposition testimony?

The employer argued it was because of the conclusion reached by the expert with regard to the degree of impairment sustained by claimant secondary to the 1981 floor buffer accident. More specifically, the employer says the expert did not have the benefit of adequate and complete medical examination.

Secondly, says Tulsa County, it was error for the expert to use the 1984 Second Edition of the AMA *Guides*[2] as a basis for part of his conclusion "because it [such guideline] was unavailable under the 1981 [sic] version of the Guides, First Edition."

Thirdly, it is argued, the expert's computation of 46 percent impairment was in error because it resulted from inclusion of an inappropriate figure representing the amount of lost motion in the hip.

And finally, the employer contends it was fatal error to make an award without

---

1. A claim was apparently filed and dismissed by the court on the jurisdictional ground that claimant was not engaged in a "hazardous employment" as specified under the version of the Act in effect at that time.

2. American Medical Association, *Guides to the Evaluation of Permanent Impairment.*

expert evidence with regard to the extent of impairment lingering from the first injury.

Returning now to the employer's first point, the argument seems to be that the expert should have evaluated claimant's injury on the basis of Workers' Compensation Court Rule 20(h), which applies to injuries occurring before July 1, 1978. The short answer to this contention is, of course, that the injury complained of in this proceeding occurred after July 1, 1978, and therefore is not affected by the rule.

■ The employer's next complaint—that the impairment percentage given by claimant's expert was invalid because the edition of the AMA *Guides* he used was more current than the 1977 edition specified by Workers' Compensation Court Rules 20 and 23—appears on its face to be an overindulgence in legalistic surrealism. If, as we think, it is the intent and purpose of the rules to require an expert to use AMA *Guides* where possible in evaluating consequences of work-related injuries and an expert draws on the latest edition because an earlier edition offers no help, to deny him the right to do so would manifest ultimate contempt for common sense. Moreover, Rule 20(i) provides that adherence to the First Edition of the *Guides* is not required if the reason for deviating is stated, which the expert did in this case.

■ The employer's third contention—that claimant's expert erred in calculating the amount of claimant's impairment—does have merit. The percentage of lost hip motion should have been translated by the physician into a whole man percentage of disability. But as we will see his testimony contains sufficient data to enable one to correctly interpret his report and convert the figures into the proper *Guides*-based impairment figures.

■ There is a significant, related matter not mentioned by the employer and that has to do with the disability finding of the trial judge. She found the disability to be a percentage "to the Right Hip." This was error. Hip injuries are non-scheduled injuries and disability resulting from non-

scheduled injuries is to be determined in terms of a percentage of disability to the "body as a whole." *Tulsa Container, Inc. v. Bolding,* 565 P.2d 41 (Okl.1977). Here claimant's expert correctly calculated impairment estimates by converting his findings of lost motor function (20 percent) and the hip arthroplasty (10 percent) to percentages in terms of the whole person. He failed to do this, however, with regard to his third finding—lost motion of the hip—which he found to be 16 percent to the lower extremity. Thus dissimilar percentages were added to achieve a total of 46 percent impairment to the "whole man." According to the AMA *Guides* 56, Table 10 (1st ed., 1977), a 16 percent impairment of the lower extremity due to "lost motion of the hip" converts to a 6 percent impairment of the whole man. The whole man figures therefore total 36 percent rather than 46 percent.

Whether or to what extent the trial judge relied on the calculations in the report in reaching the conclusion she did is not known. What is discernible, though, is the fact that the court erroneously based its disability finding of permanent partial disability on a percentage "to the Right Hip" rather than on a percentage of the "whole body" as required by law. It is not possible to say whether the error is due to faulty draftsmanship or otherwise. By reason of this it is necessary to vacate the percentage finding along with the compensation award based on it and remand for correctional proceedings.

Lastly we address the employer's complaint that claimant's expert failed to discuss, make findings concerning or opine about the existence in 1981 of any residual impairment resulting from the 1978 injury. The complaint is founded in the following West headnote in *B.F. Goodrich v. Frost,* 630 P.2d 321 (Okl.1981):

"Degree of disability of a 'physically impaired person' at time of subsequent injury is a material issue in determining claimant's cause."

This excerpt from the *Goodrich* opinion is, of course, an appropriate observation regarding a requirement of 85 O.S.1981

§ 171, but it has only tangential relevance here. Section 171 defines a "physically impaired person" as one who "as a result of accident, disease, birth, military action, or any other cause, *has sustained an injury* to any part of the body . . . *such as is obvious and apparent from observation* or examination *by an ordinary layman* . . . *or* any *disability* which *previously* has been *adjudged* . . . by [a] state . . . court."

*Goodrich* dealt with the latter—a previously adjudged disability—and also resolved a burden of proof problem. More specifically, the issue was who had the burden in a second injury situation in which the employee had been judicially adjudged to have sustained permanent partial disability from an earlier injury. The *Goodrich* court decided the most equitable way to handle the matter was to introduce a rebuttable presumption—that the adjudicated disability had not changed at the time of the second injury.

█ Since *Goodrich* involved an earlier judicial determination of disability it is of no help here because, as we said, claimant Roberts' first injury was never adjudicated and thus no disability was judicially determined. Under these circumstances, the only basis that can statutorily exist for a finding that claimant was a § 171 "physically impaired person" at the time of the 1981 injury is a finding that it was "obvious and apparent from observation" by a layman "not skilled in the medical profession" that claimant was physically impaired.

There is no evidence in the record to support such a finding, nor was one requested. Claimant said he recovered from the initial injury and worked without any noticeable impairment until the 1981 injury.

This was reinforced by his expert's statement that he found no residual impairment secondary to the 1978 injury. The employer offered no proof of any physical impairment of claimant that was "obvious and apparent" to an ordinary layman in 1981. Thus we hold that claimant presented sufficient competent evidence that he was not a "physically impaired person" at the time of the 1981 injury and the court properly decided the issues solely on the basis of the sequelae consequent to the 1981 injury.

### III

For the foregoing reasons we affirm most of the basic findings and conclusions of the trial judge but vacate the finding of 25 percent permanent partial disability and the concomitant compensation award because of the error, as previously noted, in calculating the disability in terms of the "Right Hip" rather than the body as a whole.

The order is therefore affirmed in part and vacated in part and the cause is remanded with directions to give the parties an opportunity to submit further evidence on the issue of the degree of permanent partial disability claimant has sustained to his whole body as a result of the 1981 injury and then to determine the amount of disability on the basis of such evidence.

RAPP and STUBBLEFIELD, JJ., concur.